UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

**OPE ADENIKINJU,**

    **Plaintiff,**

  **v.**

**EQUIFAX INFORMATION SERVICES, LLC**        Civil Action No. 3:24-cv-99

    **Defendant.**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Ope Adenikinju, by Counsel, and for her Complaint against Defendant Equifax Information Services LLC, alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for damages brought by an individual consumer, Ope Adenikinju ("Plaintiff"), against Defendant Equifax Information Services LLC ("Defendant" or "Equifax") for several violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x (the "FCRA").

2. Accuracy of information and transparency are core goals of the FCRA since Congress enacted it in 1970. Key to Congress's aspirations is the ability of consumers to dispute inaccurate information and have those inaccuracies corrected. The FCRA makes this right absolute, demanding that consumer reporting agencies ("CRAs") like Defendant investigate a consumer's claim that "any item" of information is incomplete or incorrect. 15 U.S.C. § 1681i(a).

3. Importantly, nothing in the FCRA allows a CRA to delay or interrupt its investigation of a dispute once received. Id. Indeed, the Act provides for the opposite—requiring

CRAs to, for example, forward the dispute to anyone who furnished to the CRA information relative to the dispute within five business days of receiving the dispute. 15 U.S.C. § 1681i(a)(2)(A).

4. In the Summer of 2023 Plaintiff discovered that Defendant had mixed her twin brother's credit file with her credit file and labeled her brother's debts and credit inquiries as hers. Defendant did this despite the fact that Plaintiff and her brother have different first names, middle names, Social Security Numbers, and address histories.

5. When Plaintiff discovered Defendant's error, she disputed the inaccurate information with Defendant. Nevertheless, despite multiple disputes that gave Defendant enough information to identify and correct the problem, Defendant has not removed her brother's information from her credit reports.

6. Plaintiff brings claims against Equifax for its continued reporting of inaccurate information about Plaintiff and for its failure to reasonably investigate her disputes.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

8. Venue is proper in this District and Division because the violations described in this Complaint occurred in this District, the Plaintiff resides here and Defendant transacts business within this District and Division.

## PARTIES

9. Plaintiff is a natural person who resides in Richmond, Virginia. She is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

10. Equifax is a consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(u).

## GENERAL FACTUAL BACKGROUND

### *Defendant and the "Mixed File"*

11. Congress enacted the FCRA to protect consumers from the harm caused by inaccurate reporting. To that end, the FCRA requires that credit reporting agencies such as Equifax, in preparing a consumer report, must "follow reasonable procedures to assure maximum possible accuracy of the information" in the report. 15 U.S.C. § 1681e(b).

12. The FCRA also affords consumers the critical right to dispute inaccurate or incomplete information in their consumer reports. The FCRA requires that upon receiving notice from a consumer that the consumer disputes the accuracy or completeness of any item of information in the consumer's file, Defendant follows specific requirements, including:

   a. conduct a reasonable reinvestigation of the disputed information to determine if the information is accurate;

   b. notify the source of the information of the dispute within five days;

   c. provide the source with all relevant information received from the consumer;

   d. review and consider all relevant information provided by the consumer in conducting the reinvestigation;

   e. delete or modify information that is found to be inaccurate or incomplete, or that cannot be verified;

   f. complete the reinvestigation within 30 days; and

  g. send the consumer written results of the reinvestigation and a credit report that is based on the consumer's file as that file is revised as a result of the reinvestigation.

15 U.S.C. § 1681i(a).

13. Defendant's policies and procedures do not ensure compliance with these provisions of the FCRA.

14. A major problem with Defendant's procedures is the "mixed file." A mixed file is placing information belonging to one consumer into the file or credit report of a different consumer. In some cases, the two consumers are merged together so there is one file for both consumers.

15. Defendant's procedures for matching consumer information to a consumer file regularly result in the mixing of one consumer with another.

16. Mixed files create a false description of a consumer's credit history. Further, mixed files result in the consumer not obtaining credit or other benefits of our economy.

17. Consumers with mixed files often have their confidential personal and financial information wrongfully disclosed when the other consumer is seeking credit, and have their confidential information disclosed to the other person. This violates the consumer's privacy and also greatly increases their risk of identity theft.

18. Mixed files are not a new phenomenon. Defendant has been aware of mixed files for more than 35 years. *See Thompson v. San Antonio Retail Merchants Ass'n,* 682 F.2d 509 (5th Cir. 1982).

19. Defendant creates mixed files despite that every consumer has unique personal identifying information, such as a Social Security number. That is so because Defendant's matching logic allows information to be included in a consumer's file even when the Social

Security number reported with the information is different than the Social Security number on the consumer's file.

20. Mixed files are a common problem among siblings who share similar names, and Defendant has been sued many times for mixing the credit files of siblings.

21. Yet, Defendant continues to operate as though siblings or twins do not exist. Like here, Defendant fails to incorporate into its matching procedures filters that will match things like middle initial or name where available, address history, gender and that will otherwise verify that Social Security numbers that are one digit different from one another belong to two different consumers rather than the same consumer.

22. Defendant knows its matching procedures are causing inaccurate credit reports and mixed files.

23. In the 1990's, the Attorneys General of a number of states filed a lawsuit against Defendant because of its failure to comply with the FCRA, including the mixing of consumers' files.

24. In 1992, Defendant signed an Agreement of Assurances with the State Attorneys General and agreed to take specific steps to prevent the occurrence of mixed files and to adopt procedures designed specifically to reinvestigate consumer disputes resulting from mixed files.

25. In 1995, Defendant signed a Consent Order with the FTC. To prevent the occurrence of a mixed file, Equifax agreed not to place information in a consumer's file (other than certain public record information) unless it has identified such information by at least two of the following identifiers: (i) the Consumer's name; (ii) the Consumer's Social Security Number, (iii) the Consumer's date of birth, (iv) the Consumer's account number with a Subscriber or a similar identifier unique to the Consumer.

26. In 2015 Defendant again entered into an "Assurance of Voluntary Compliance" with thirty-one state Attorneys General, wherein it agreed to implement procedures designed to correct the ongoing mixed-file problem.

27. Defendant continues to repeatedly mix consumers' files despite its agreements with the FTC and state Attorneys General, and hundreds of lawsuits filed against it by consumers whose files have been mixed.

28. Over the last ten years, Defendant has been sued hundreds of times by consumers whose files were mixed with a different consumer. A significant number of these lawsuits have involved Defendant mixing the credit information of siblings who share some similar personal identifying information.

29. Despite federal law, Congressional mandates, federal and state government enforcement actions, and hundreds of consumer lawsuits, Defendant's mixed files remain a significant problem for consumers, including Plaintiff.

30. Defendant's sale of consumers' most private and sensitive personal and financial information results in billions of dollars in revenue to Defendant annually.

31. Plaintiff is among the victims of Defendant's mixed files. Defendant mixed Plaintiff's credit and personal information with information belonging to her brother, although they have different first names, middle names, Social Security numbers, genders, and addresses. As a result, Defendant prepared and sold numerous credit reports that included both Plaintiff's and her brother's information.

32. This lawsuit involves a CRA that (1) did not follow reasonable procedures to assure the maximum possible accuracy of the information it reported about Plaintiff, and (2) failed to comply with the FCRA's requirements in its handling of Plaintiff's disputes.

33. This lawsuit seeks actual and punitive damages, as well as costs of suit and attorneys' fees, resulting from Defendant's failure to comply with the FCRA.

### *Plaintiff's Experience with Equifax*

34. In the Summer of 2023, Plaintiff discovered that her Equifax credit report contained inaccurate information that belonged to her brother.

35. The inaccurate information included six student loans, a car loan, and multiple credit inquiries.

36. Making matters worse, Plaintiff found that when she logged into her account via Equifax's website using her name and Social Security number, Equifax's system provided her with a report that included her brother's name and Social Security number, and that the report included both her information and his.

37. In June 2023 Plaintiff called Equifax's customer service number to dispute the inaccurate information and disentangle her credit report from her brother's information.

38. Several days after making her phone dispute with Equifax, Plaintiff received a call from an Equifax representative stating that the issue had been resolved and that Equifax had created separate credit files for she and her brother.

39. Equifax never sent Plaintiff written confirmation of the results of its reinvestigation, as required by 15 U.S.C. § 1681i(a)(6).

40. After receiving this phone call from Equifax, Plaintiff logged into her account to check her credit report. She discovered that Equifax had not fixed the problem. Her brother's accounts and personal information were still appearing on her credit report.

41. Plaintiff was at a loss for what to do. So, she took an extraordinary next step: she drove to Equifax's headquarters in Atlanta, Georgia, and requested an in-person meeting with someone at Equifax to resolve her mixed credit report problem.

42. On June 28, 2023, Plaintiff met with Bridget Vincent at Equifax's headquarters.

43. During their meeting Plaintiff explained that Equifax was mixing her credit file with her twin brother's credit file, and that she needed Equifax to fix the problem going forward.

44. At the end of the meeting Plaintiff handed Ms. Vincent a letter she had written that thoroughly outlined her prior dispute, Equifax's failure to fix the problem, and what steps Equifax needed to take to correct the issue.

45. Following her in-person meeting with Equifax, as well as handing Equifax her dispute letter, Equifax did not correct Plaintiff's file, and did not remove her brother's information from her credit report.

46. Plaintiff never received a response to her dispute from Equifax, other than a letter stating Equifax was unable to locate a credit file for her.

47. This, however, was not true. Plaintiff was able to access her credit file online, and it still included her brother's accounts and information.

48. In August 2023 Plaintiff sent Equifax a dispute letter in the mail. In the letter she explained:

> My name is Opeoluwa Taiwo Adenikinju. My SSN is [xxx-xx-xxxx]. Copies of my driver's license and ssn card are enclosed. Equifax is reporting my brother's information on my credit file. His name is Oreoluwa Kaihinde Adenikinju. We are twins and share the same date of birth. His SSN ends in [xxxx] and mine ends in [xxxx]
>
> I have notified Equifax that it is mixing our files on several occasions, including through phone disputes, a letter that I delivered to Equifax's headquarters, and an in-person meeting that I had with an Equifax employee named Bridget Vincent. I am enclosing a copy of that letter for you to review as part of this dispute. Please

> review it carefully because it outlines the problems I am encountering with my Equifax credit file.
>
> As I stated in the letter, I am asking Equifax to create separate credit files for me and my brother, and to ensure that brother's accounts and information are not appearing on my credit report. These accounts include: (1) Hyundai Capital account number [xxxx…]; (2) all the student loans (I have none); and (3) any other information or inquiries associated with my brother's social security number.

49. Equifax received Plaintiff's letter, and conducted a reinvestigation.

50. Equifax did not send Plaintiff the results of its investigation. Someone at Equifax, however, called Plaintiff and told her that her file was fixed.

51. On October 2, 2023, Plaintiff reviewed her Equifax credit file online. She confirmed that Equifax had removed her brother's information from her credit report. It had also removed all of *her* credit information from the report. Her Equifax credit file therefore showed no accounts whatsoever.

52. During the timeframe that Equifax had mixed Plaintiff's credit file with her brother's information, it sold her credit report to third parties for transactions initiated by her brother.

53. Equifax also sold Plaintiff's credit report in transactions where Plaintiff applied for credit, and Equifax sold report about her that inaccurately included her brother's debts, loans, and information.

## CLAIMS FOR RELIEF

### COUNT 1 – Violation of Section 1681e(b) of the FCRA

54. Plaintiff restates each of the allegations in the proceeding paragraphs as if fully set forth at length herein.

55. Defendant willfully violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports and consumer files it published and maintained concerning Plaintiff.

56. Further, after Plaintiff's detailed disputes put Defendant on notice of likely inaccuracies and reasons to doubt the correctness of the reporting of its creditor-customers, Defendant ignored such information and did not use any human or substantive review to confirm and verify that its procedures were ensuring maximum possible accuracy of Plaintiff's credit reports.

57. Defendant furnished consumer reports to third parties containing the inaccurate tradeline information and it did so after receiving notice of these inaccuracies.

58. Defendant's conduct, action and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

59. As a result of Defendant's violations of 15 U.S.C. § 1681e(b), Plaintiff is entitled to recover her actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative her statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

60. Plaintiff is entitled to recover costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

61. Defendant negligently failed to comply with the requirements of the FCRA.

62. As a result of Defendant's failure to comply with the requirements of the FCRA, Plaintiff has suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress, and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

63. Plaintiff is entitled to recover costs and attorneys' fees from Defendant, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT 2 – Violation of § 1681i of the FCRA

64. Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

65. Defendant willfully violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's consumer file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to its furnishers; by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

66. As a result of Defendant's violation of 15 U.S.C. § 1681i, Plaintiff is entitled to recover her actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative her statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

67. Defendant's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

68. Plaintiff is entitled to recover costs and attorneys' fees from Defendant, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff moves for actual damages, statutory damages and punitive damages; for attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

February 12, 2024.

    Respectfully submitted,

    **OPE ADENIKINJU**

    By:   */s/ Leonard A. Bennett*
    Leonard A. Bennett
    Craig C. Marchiando
    **CONSUMER LITIGATION ASSOCIATES, P.C.**
    763 J. Clyde Morris Blvd., Suite 1-A
    Newport News, VA 23601
    (757) 930-3660
    (757) 930-3662 fax
    craig@clalegal.com

    Jeffrey B. Sand (*pro hac vice forthcoming*)
    WEINER & SAND LLC
    800 Battery Avenue SE
    Atlanta, Georgia  30339
    (404) 254-0842 (Tel.)
    (404) 205-5029 (Tel.)
    (866) 800-1482 (Fax)
    Email: aw@wsjustice.com
    Email: js@wsjustice.com

    *Attorneys for Plaintiff*